**A. STUCKI COMPANY,**
**Plaintiff–Appellant,**

v.

**BUCKEYE STEEL CASTINGS COMPANY, Defendant–Appellee.**

**No. 91–1502.**

United States Court of Appeals, Federal Circuit.

May 6, 1992.

Raymond G. Hasley, Rose, Schmidt, Hasley & DiSalle, Pittsburgh, Pa., argued, for plaintiff-appellant.

Charles C. Hileman, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., argued, for defendant-appellee.

Before RICH, Circuit Judge, COWEN, Senior Circuit Judge, and CLEVENGER, Circuit Judge.

RICH, Circuit Judge.

A. Stucki Company (Stucki) appeals from the June 19, 1991 judgment of the U.S. District Court for the Southern District of Ohio, Case No. C2–88–0308, granting summary judgment in favor of defendant Buckeye Steel Castings Company (Buckeye) and rejecting Stucki's claim that by virtue of Buckeye's part shareholder interest in and alleged control of now-defunct Railroad Dynamics, Inc. (RDI), Buckeye should now be held jointly and severally liable for damages awarded to Stucki because of RDI's previously adjudged infringement. We *affirm.*

## BACKGROUND

Stucki is the assignee of U.S. Patent No. 3,837,292 ('292 patent), now expired, directed to hydraulic shock absorbers or "snubbers" used on railroad boxcars. In 1980 Stucki won a jury verdict that RDI had infringed the '292 patent, and was awarded approximately $2.2 million in damages. Judgment entered on the jury verdict was affirmed by this court. *Railroad Dynamics, Inc. v. A. Stucki Co.,* 727 F.2d 1506, 220 USPQ 929 (Fed. Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 220, 83 L.Ed.2d 150 (1984). Shortly thereafter RDI filed a petition under Chapter 11 of the Bankruptcy Act; its assets were ultimately liquidated in 1990.

Concerned about RDI's ability to pay the damages, Stucki in November 1983 initiated a second lawsuit against Stuart Schwam (Schwam), RDI's president and 50% shareholder, and Worthington Industries, Inc. (Worthington). Stucki alleged that Worthington had merged with Buckeye in 1980, that at that time Buckeye

owned the other 50% of RDI's stock, and that Worthington should be held jointly liable with RDI and Schwam for RDI's infringement, in view of "Buckeye's ownership and management of a business and the acts of Buckeye through its agents, servants and employees in … [RDI]." Worthington answered Stucki's complaint by stating that it was not a proper party defendant, because Buckeye had not been merged with Worthington, and instead remained a wholly-owned subsidiary. Stucki thereafter moved (in September 1987) to amend its complaint to include Buckeye as a co-defendant. *A. Stucki Co. v. Worthington Indus., Inc.*, 849 F.2d 593, 595, 7 USPQ2d 1066, 1067 (Fed. Cir.1988). Significantly, when informed that joinder of Buckeye would result in a delay of trial, Stucki withdrew its motion to join Buckeye, electing to proceed against Worthington alone. *Id.* The 1983 action resulted in the entry of summary judgment against Schwam, *A. Stucki Co. v. Schwam*, 634 F.Supp. 259, 229 USPQ 903 (E.D. Pa.), *modified*, 638 F.Supp. 1257 (E.D.Pa.1986), but a directed verdict in favor of Worthington, which directed verdict was affirmed by this court. *Worthington*, 849 F.2d at 595–98, 7 USPQ2d at 1067–69.

Despite partial recoveries from RDI and Schwam, approximately $1.7 million of Stucki's claim against RDI remained uncollected. In March 1988, Stucki commenced the instant action against Buckeye, alleging in Count I of its complaint that Buckeye was jointly and severally liable, along with Schwam and RDI, for patent infringement and related acts of unfair competition. Stucki amended its complaint against Buckeye in July 1989, to include a Count II for violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–68 (1988). Stucki alleged that Buckeye engaged in a pattern of racketeering activity by causing RDI to infringe the '292 patent.

The district court did not decide the merits of Stucki's claims, for it granted summary judgment in favor of Buckeye on the ground that both claims were time-barred. With respect to the patent infringement count, the district court held that Stucki was precluded under 35 U.S.C. § 286[1] from recovering any damages from Buckeye arising from Buckeye's alleged participation in RDI's infringing activities. The court found that "there is simply no evidence to support a finding that [Buckeye] participated in or induced any patent infringement" during the period ending in March 1988, when Stucki's complaint against Buckeye was filed, and extending back six years to March 1982. After June 1980, the district court found, Buckeye had adopted a "hands-off and stay clear policy" with respect to RDI, and Buckeye ceased having a representative on RDI's board of directors in 1981.

Stucki contends here that the district court erred as a matter of law in its application of 35 U.S.C. § 286 to bar Stucki's recovery. Without citation of authority, Stucki asks that the statute's introductory phrase, "[e]xcept as otherwise provided by law," be broadly construed as encompassing an equity-based exception to application of the six-year limitation on recovery of damages, so as "to uphold the rights of diligent patentees and prevent wrongdoers from escaping liability established by a judgment." Stucki also contends that the instant action against Buckeye is of an equitable nature, to *enforce* a judgment, though Stucki has no judgment against Buckeye. In light of the equities involved, Stucki's argument continues, the district court should have eschewed a "mechanical application" of § 286, and considered evidence purporting to show Buckeye's participation in RDI's infringement beyond the six-year damages limitation period; i.e., *prior* to March 1982.

## ANALYSIS

We reject Stucki's threshold argument that the instant action against Buck-

---

1. Section 286 of Title 35 provides in pertinent part:

    Except as otherwise provided by law, no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint or counterclaim for infringement in the action.

eye is equitable in nature. It is clear from Stucki's complaint that this is a suit seeking to establish liability on the part of Buckeye for money damages. No request has been made of the district court that it exercise its equitable power to issue a writ of execution against Buckeye to enforce an already-rendered judgment; simply stated, there is no such judgment, at least *as to Buckeye.*

■ Stucki next asks us to read into the introductory phrase of § 286 a meaning that is nowhere suggested in the case law or legislative history. Though the six-year damage limitation period has been a part of the patent statutes since 1897,[2] the introductory phrase "[e]xcept as otherwise provided by law" was not added until the 1952 Patent Act. Stucki has not pointed to any legislative history explaining the addition of the introductory phrase, nor has this court's own research uncovered any.[3] Whatever the reason for addition of the introductory phrase in § 286, Stucki has not persuaded us that the district court erred in rejecting Stucki's interpretation.

Stucki argues that certain equitable considerations in the nature of those that may overcome the equitable defense of laches, e.g., the "other litigation" exception, can also operate to "toll" application of § 286. We disagree. First, we note that Buckeye has not raised laches or estoppel as a defense in these proceedings. Moreover, it is clear that § 286 operates independently of the equitable defenses of laches and estoppel. *See A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1030–1031 (Fed.Cir.1992) (no conflict between equitable defense of laches and arbitrary limitation on period for which damages may be awarded under 35 U.S.C. § 286). *See also Standard Oil Co. v. Nippon Shokubai Kagaku Kogyo Co.*, 754 F.2d 345, 348, 224 USPQ 863, 865 (Fed. Cir.1985) (recovery of damages for infringement taking place within the six years prior to the filing of the complaint may be had under 35 U.S.C. § 286, "assum[ing], of course, no *other* impediment to recovery or maintenance of the suit such as application of the doctrine of laches" exists) (emphasis added). The fact that courts have historically "borrowed" the six-year damage limitation period of § 286 as the time period for giving rise to a rebuttable presumption of laches, *A.C. Aukerman*, 960 F.2d at 1034–1035, does not otherwise link the two concepts.

■ Stucki further contends that § 286 should be interpreted as applicable only against direct infringers, not against those who may be indirectly liable for infringement through inducement or contribution. This issue was apparently not raised below, and in any event was not addressed by the district court. Stucki's position appears without merit in any case, for we have previously held that where a patentee complained of no acts of contributory infringement within the six years prior to commencement of the action, no recovery could be had against the alleged contributory infringer, regardless of whether others directly infringed within the six-year period. *Standard Oil*, 754 F.2d at 348–49, 224 USPQ at 865–66.

In sum, Stucki failed below to come forward with any evidence that Buckeye committed any act after March 1982 that in any

---

**2.** *See* Act of March 3, 1897, ch. 391, § 6, 29 Stat. 692.

**3.** While rejecting Stucki's "equitable exception" interpretation, Buckeye suggests that the introductory phrase of § 286 may have been added in recognition of state laws which toll statutes of limitation in favor of plaintiffs laboring under disabilities such as incapacity or fraud. Though Buckeye's view seems logical on its face, we note pre–1952 authority suggesting that such considerations are inapplicable to the damage limitation statute, which is not, strictly speaking, a statute of limitations, but a condition or limitation on a statutorily-created right. *See, e.g., Pollen v. Ford Instr. Co.*, 108 F.2d 762, 763, 44 USPQ 142, 143 (2d Cir.1940) ("[w]here the time for commencing action is prescribed in the statute which creates the liability and gives the right of action, the time is not extended by reason of fraud or concealment which might work an extension of ordinary statutes of limitation"); *Peters v. Hanger*, 134 F. 586, 589 (4th Cir.1904) (stating as dictum, "this [six-year] restriction [on the statutory right of recovery] is not subject to the disabilities and excuses through which ordinary statutes of limitation may be avoided").

way constituted, induced, or contributed to RDI's infringement. Having independently reviewed the record, we agree with the district court that no genuine issues of material fact exist as to Buckeye's post-March 1982 conduct, and that Buckeye is entitled to judgment as a matter of law on Count I.

The district court also granted summary judgment in favor of Buckeye on Count II, for alleged violation of RICO. A four-year statute of limitations applies to RICO claims, *Agency Holding Corp. v. Malley–Duff & Assoc., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), though the circuit courts of appeal are divided as to when a civil RICO cause of action accrues. The district court in this case applied the majority rule as to accrual; namely, that the statute of limitations begins to run when the plaintiff discovers, or reasonably should have discovered, the basis for its civil RICO claim. *See, e.g., Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102–05 (2d Cir.1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1643, 104 L.Ed.2d 158 (1989). The district court held that, even assuming patent infringement can form the basis of a RICO violation, any RICO claim Stucki had against Buckeye would clearly have accrued prior to July 1984 (four years from the date of filing of Stucki's amended complaint presenting the RICO claim). Thus, the court held, Stucki's RICO claim was barred by the four-year statute of limitations.

■ Stucki now argues that its RICO cause of action could not have accrued before October 1984, when the Supreme Court denied RDI's petition for a writ of certiorari to this court in our *Railroad Dynamics* decision, thus ending with finality the dispute over the validity of the '292 patent. Stucki did not raise this argument below, and hence we will not consider it. Alternatively, Stucki contends that its RICO claim could not have accrued until RDI's bankruptcy proceeding was concluded, in January 1990. Stucki's theory appears to be that Buckeye engaged in a pattern of racketeering activity by participation in a "bankruptcy plot" to avoid payment of damages, and that Stucki could not be certain of the amount of its uncollected loss until the distribution of RDI's assets was completed. The district court rejected this line of argument, and we see no reason to differ. Even applying the most expansive "last predicate act" definition of accrual advocated by Stucki, *see Keystone Ins. Co. v. Houghton*, 863 F.2d 1125, 1130 (3d Cir.1988), Stucki has failed to explain why RDI's January 1990 *liquidation*, rather than its March 1984 bankruptcy *filing*, should constitute the "last predicate act which is part of the same pattern of racketeering activity." *Id.* As Buckeye correctly notes, Stucki's position only *improved* after RDI's bankruptcy filing, since Stucki obtained a partial recovery through the eventual distribution of RDI's assets. The district court did not err in granting summary judgment to Buckeye on Count II.

■ Stucki's present predicament stems from the unfortunate fact that it dropped its earlier effort to join Buckeye in the 1983 action against Schwam and Worthington in the Eastern District of Pennsylvania. Stucki contends that venue was improper as to Buckeye in that forum, and that lack of funds prevented the filing of a separate action against Buckeye in an appropriate location. Stucki further contended at oral argument that *Blonder–Tongue Labs., Inc. v. University of Ill. Found.*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971), influenced its decision not to institute a separate infringement action against Buckeye while the Schwam/Worthington action was ongoing. We find the latter contention meritless, for the purpose of the *Blonder–Tongue* collateral estoppel rule was to prevent relitigation of patent *validity*, once a patent had been held invalid in a case where the patentee had a full and fair opportunity to litigate the issue. *Mississippi Chem. Corp. v. Swift Agric. Chems. Corp.*, 717 F.2d 1374, 1378, 219 USPQ 577, 581 (Fed. Cir.1983). The issue here was liability for infringement, and more specifically, whether a previous nonparty (Buckeye) was sufficiently involved in the activities of those already adjudged

to have infringed (RDI and Schwam) that it could be held jointly and severally liable.

For whatever reason, Stucki simply waited too long to sue Buckeye. Stucki's plea that we should effectively invent new law to rectify its earlier strategic error is not well taken. Even assuming *arguendo* that Buckeye's pre–1982 involvement in RDI's affairs justifies piercing the corporate veil and holding Buckeye liable, it is not in this court's power to ignore the damage limitation period of § 286, nor to create legally unsubstantiated exceptions thereto.

AFFIRMED.